BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

Patrick Burns (Nev. Bar No. 11779)
Mahana K. Weidler (MD Bar (NBN))
Trial Attorneys
Department of Justice – Tax Division
        150 M. Street NE
        Washington, D.C. 20002
        Telephone: (202) 514-5762
        Facsimile: (202) 514-9623
        E-mail:   J.Patrick.Burns@usdoj.gov
                  Mahana.K.Weidler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

```
FILED
CLERK, U.S. DISTRICT COURT

8/12/25

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MRV_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR  2:25-cr-00664-RGK |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT SUSANA LORENA VIRREY |
| v. | |
| SUSANA LORENA VIRREY, | |
| Defendant. | |

1.    This constitutes the plea agreement between SUSANA LORENA VIRREY ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") and the United States Department of Justice, Tax Division (the "Tax Division") in the above-captioned case. This agreement is limited to the USAO and the Department of Justice, Tax Division (together referenced in this agreement as the "Government") and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

1

<u>DEFENDANT'S OBLIGATIONS</u>

2      2.    Defendant agrees to:

3           a.    Give up the right to indictment by a grand jury and,
4    at the earliest opportunity requested by the Government and provided
5    by the Court, appear and plead guilty to a single-count information
6    in the form attached to this agreement as Exhibit A or a
7    substantially similar form, which charges defendant with conspiracy
8    to file false claims for refund in violation of 18 U.S.C. § 286.

9           b.    Not contest facts agreed to in this agreement.

10          c.    Abide by all agreements regarding sentencing contained
11   in this agreement.

12          d.    Appear for all court appearances, surrender as ordered
13   for service of sentence, obey all conditions of any bond, and obey
14   any other ongoing court order in this matter.

15          e.    Not commit any crime; however, offenses that would be
16   excluded for sentencing purposes under United States Sentencing
17   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
18   within the scope of this agreement.

19          f.    Be truthful at all times with the United States
20   Probation and Pretrial Services Office and the Court.

21          g.    Pay the applicable special assessment at or before the
22   time of sentencing unless defendant has demonstrated a lack of
23   ability to pay such assessments.

24          h.    Pay restitution to the Internal Revenue Service for
25   the count of conviction and any relevant conduct in an amount to be
26   determined at sentencing. Defendant agrees to send all payments made
27   pursuant to the Court's restitution order to the Internal Revenue
28   Service at the following address:

```
                    IRS - RACS
                    Attn: Mail Stop 6261, Restitution
                    333 W. Pershing Ave.
                    Kansas City, MO 64108
```

If full payment cannot be made immediately, defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. Defendant also agrees to provide the above-described information to the probation office.

3.    Defendant further agrees to cooperate fully with the Government, the Internal Revenue Service, and, as directed by the Government, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority. This cooperation requires defendant to:

a.    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the Government or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the Government, or its designee, inquires.

4.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement; and

(2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

<u>THE GOVERNMENT'S OBLIGATIONS</u>

5.    The Government agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

6.    The Government further agrees:

a.    Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the Government, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the Government, any Cooperation Information. Defendant agrees, however, that the Government may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any

4

criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b. Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c. In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d. If the Government determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7. Defendant understands the following:

a. Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement,

obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.    Nothing in this agreement requires the Government or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.    Defendant cannot withdraw defendant's guilty plea if the Government does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the Government makes such a motion and the Court does not grant it or if the Court grants such a Government motion but elects to sentence above the reduced range.

d.    At this time the Government makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance. The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the Government.

e.    The Government's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSE</u>

8.    Defendant understands that for defendant to be guilty of the crime charged in Count 1, that is, conspiracy to file false claims for refund in violation of Title 18, United States Code, Section 286, the following must be true:

a. the defendant entered into a conspiracy to obtain payment or allowance of a claim against a department or agency of the United States;

b. the claim was false, fictitious, or fraudulent;

c. the defendant knew or was deliberately ignorant of the claim's falsity, fictitiousness, or fraudulence;

d. the defendant knew of the conspiracy and intended to join it; and

e. the defendant voluntarily participated in the conspiracy.[1]

<u>PENALTIES AND RESTITUTION</u>

9.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 286, is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.    Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

11.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised

---

[1] *See United States v. Dedman*, 527 F.3d 577, 593–94 (6th Cir. 2008).

release imposed, defendant may be returned to prison for all or part
of the term of supervised release authorized by statute for the
offense that resulted in the term of supervised release, which could
result in defendant serving a total term of imprisonment greater than
the statutory maximum stated above.

12.    Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury.
Defendant understands that she is pleading guilty to a felony and
that it is a federal crime for a convicted felon to possess a firearm
or ammunition. Defendant understands that the conviction in this case
may also subject defendant to various other collateral consequences,
including but not limited to revocation of probation, parole, or
supervised release in another case and suspension or revocation of a
professional license. Defendant understands that unanticipated
collateral consequences will not serve as grounds to withdraw
defendant's guilty plea.

13.    Defendant understands that, if defendant is not a United
States citizen, the felony conviction in this case may subject
defendant to: removal, also known as deportation, which may, under
some circumstances, be mandatory; denial of citizenship; and denial
of admission to the United States in the future. The Court cannot,
and defendant's attorney also may not be able to, advise defendant
fully regarding the immigration consequences of the felony conviction
in this case. Defendant understands that unexpected immigration
consequences will not serve as grounds to withdraw defendant's guilty
plea.

1

FACTUAL BASIS

2    14.  Defendant admits that defendant is, in fact, guilty of the

3  offense to which defendant is agreeing to plead guilty. Defendant and

4  the Government agree to the statement of facts provided below and

5  agree that this statement of facts is sufficient to support a plea of

6  guilty to the charge described in this agreement and to establish the

7  Sentencing Guidelines factors set forth in paragraph 17 below but is

8  not meant to be a complete recitation of all facts relevant to the

9  underlying criminal conduct or all facts known to either party that

10  relate to that conduct:

11    a.  At all times relevant to this plea agreement,

12  defendant SUSANA LORENA VIRREY was a resident of Los Angeles County,

13  California, in the Central District of California.

14    b.  From in or about 2014 through in or about 2021,

15  defendant worked as a professional tax return preparer in California.

16    c.  From at least March 2018 through at least November 1,

17  2024, defendant was registered with the California Tax Education

18  Council (CTEC) as a California-approved tax preparer doing business

19  as 2Angels Services Corp and SV.

20    d.  Beginning in or about August 2018, defendant entered

21  into an agreement with Co-Conspirator #1 to obtain money from the

22  United States Department of the Treasury by filing and causing others

23  to file income tax returns in the names of purported trusts. These

24  returns claimed refunds based on false federal income tax

25  withholdings, income, expenses, deductions, credits, and losses. At

26  Co-Conspirator #1's direction defendant prepared and filed false and

27  fraudulent Forms 1041, U.S. Income Tax Return for Estates and Trusts,

28  for Co-Conspirator #1 and individuals that Co-Conspirator #1

9

solicited and recruited to file such false tax returns. These false and fraudulent Forms 1041 claimed large refunds based on fictitious federal income tax withholdings reported in false and fraudulent Forms 1099 prepared by defendant and attached to the false returns. These fictitious Forms 1099 falsely purported to be issued by banks, online payment platforms, and other businesses. They also reported fictitious payments and loans by Co-Conspirator #1, the individual clients, and the purported trust and business entities created for purposes of the scheme.

e.    These false and fraudulent Forms 1041 included the following, among others:

| Tax Year | Trust Tax Return (Approximate Filing Date) | False Withholding Amount | Fraudulent Refund Claimed | Refund Paid by the IRS |
|---|---|---|---|---|
| 2016 | Form 1041 – Melvin Louis Huges Estates (August 28, 2018) | $5,253,048 | $5,239,044 | -- |
| 2017 | Form 1041 – Melvin Louis Huges Estates (October 23, 2018) | $251,421 | $240,253 | -- |
| 2016 | Form 1041 – P.W. Trust (February 5, 2019) | $1,265,340 | $1,253,069 | $1,283,082.05 |
| 2016 | Form 1041 – Bandele Trust (June 6, 2019) | $5,709,941 | $5,709,941 | $5,778,234.78 |
| 2017 | Form 1041 – Bandele Trust (July 1, 2019) | $502,842 | $502,842 | $506,783.40 |
| 2016 | Form 1041 – J.F. Trust (August 22, 2019) | $632,999 | $620,750 | $620,750 |

| 2016 | Form 1041 – 5MOVEMENT Trust (September 24, 2019) | $880,230 | $880,230 | $880,230 |
|---|---|---|---|---|
| 2016 | Form 1041 – R. Trust (September 30, 2019) | $2,059,779 | $2,033,805 | -- |
| 2016 | Form 1041 – La. F. Trust (September 30, 2019) | $485,850 | $479,351 | $479,351 |
| 2016 | Form 1041 – P.A. Trust (October 14, 2019) | $2,248,270 | $2,219,959 | $2,219,959 |
| 2016 | Form 1041 – Lo. F. Trust (October 21, 2019) | $1,200,300 | $1,184,723 | $1,184,723 |
| 2016 | Form 1041 – Pr. Trust (November 5, 2019) | $507,770 | $503,792 | -- |
| 2018 | Form 1041 – Bandele Trust (January 13, 2020) | $918,840 | $902,666 | -- |
| 2019 | Form 1041 – Bandele Trust (February 20, 2020) | $192,263,692 | $187,530,364 | -- |
| 2019 | Form 1041 – Bandele Trust (March 23, 2020) | $173,491,456 | $169,513,560 | -- |
| 2019 | Form 1041 – Brother to Brother Outreach Tr (April 2, 2021) | $13,000,000 | $13,000,000 | -- |

      f.   In or about April 2019, at Co-Conspirator #1's direction, defendant created a document styled as "Declaration of Trust of Virrey Family Trust Security Agreement" purporting to create the Virrey Family Trust.

g.   At Co-Conspirator #1's direction, defendant prepared and filed the following false Forms 1041 for herself, attaching fictitious Forms 1099:

| Tax Year | Trust Tax Return (Approximate Filing Date) | False Withholding Amount | Fraudulent Refund Claimed | Refund Paid by the IRS |
|---|---|---|---|---|
| 2016 | Form 1041 – Virrey Family Trust (August 21, 2019) | $668,489 | $666,787 | -- |
| 2017 | Form 1041 – Virrey Family Trust (January 12, 2020) | $1,986,077 | $1,950,334 | -- |

h.   When defendant initially prepared and filed these false and fraudulent Forms 1041, Co-Conspirator #1 assured and tried to convince defendant that the tax returns were lawful. In addition to initially being deliberately ignorant about the legality of the Forms 1041, Defendant learned from the IRS that the claims and information reported in the tax returns were frivolous and legally unsupported. Specifically, beginning in and about November 2019 and continuing into February 2020, the Internal Revenue Service's Frivolous Return Program mailed IRS 3176C letters to defendant and several of the clients for whom defendant and Co-Conspirator #1 had filed false Form 1041 tax returns. Defendant and Co-Conspirator #1 came into possession of the 3176C letters sent to the clients. In sum and substance, these letters informed defendant and the clients that the Form 1041 tax returns defendant had filed were frivolous and legally unsupported. The letters referred defendant to public information outlining the frivolous and legally unsupported nature of the Forms 1041 and advised defendant that the Form 1041 she filed for

the Virrey Family Trust was "frivolous and there is no basis in the law for your position." The IRS mailed this particular letter to defendant on February 21, 2020.

i.   Despite knowing about the legally and factually frivolous nature of the Forms 1041, defendant agreed to continue assisting Co-Conspirator #1 in attempting to correct return positions to limit penalties assessed by the Internal Revenue Service, and potentially have claims paid based on those corrections.

j.   On or about March 12, 2020, defendant faxed to the IRS Frivolous Return Program a 21-page letter responding to the February 21, 2020 IRS 3176C letter. Defendant's response attached a document containing frivolous arguments about the federal income tax. On or about March 13, 2020, defendant, in concert and agreement with Co-Conspirator #1, faxed a response to the IRS Frivolous Return Program responding to a 3176C letter sent to one of Co-Conspirator #1's clients, A.J., for whom a fraudulent Form 1041 had been filed. The response attached a 22-page letter making frivolous arguments about the federal income tax.

k.   In or about January 2020, at Co-Conspirator #1's direction, defendant conducted the scheme in relation to Co-Conspirator #1's client C.P. Defendant prepared and filed the following false Form 1041 for C.P. attaching fictitious Forms 1099:

| Tax Year | Trust Tax Return (Approximate Filing Date) | False Withholding Amount | Fraudulent Refund Claimed | Refund Paid by the IRS |
|---|---|---|---|---|
| 2016 | Form 1041 – D.F. Trust (January 17, 2020) | $828,664 | $810,821 | $810,821 |

1              l.   On February 24, 2020, the IRS issued a refund check

2    for $810,821 to the D.F. Trust.

3              m.   On March 2, 2020, defendant went with C.P. to a Wells

4    Fargo Bank branch ATM where C.P. deposited the refund check into an

5    account titled under C.P.'s name as the Trustee of D.F. Trust.

6              n.   On March 9, 2020, defendant received from C.P. a Wells

7    Fargo Bank cashier's check (serial number 0094302315) in the amount

8    of $50,000 made payable to the Virrey Family Trust. On March 9, 2020,

9    defendant also received from C.P. a Wells Fargo Bank cashier's check

10   (serial number 0094302316) in the amount of $50,000 made payable to

11   the Virrey Family Trust.

12             o.   On March 9, 2020, Co-Conspirator #1 received from C.P.

13   a Wells Fargo Bank cashier's check (serial number 0094300677) in the

14   amount of $134,000 made payable to the Brother to Brother Outreach

15   Trust. On March 9, 2020, Co-Conspirator #1 also received from C.P.

16   the Wells Fargo Bank cashier's check serial number 0094302317 in the

17   amount of $60,000 made payable to the Brother to Brother Outreach

18   Trust. C.P's payments to defendant and Co-Conspirator #1 were paid

19   out of the fraudulently obtained refund. The payments to defendant

20   were partially for repayment of a loan defendant previously made to

21   C.P. and partially as a gift from C.P. to defendant as a gesture of

22   gratitude.

23             p.   On or about March 25, 2020, the IRS notified defendant

24   that her e-filing privileges had been revoked and she could no longer

25   electronically file tax returns.

26             q.   On April 17, 2020, IRS criminal investigators met

27   with defendant and, among other things, informed her that the Forms

28   1041 she had been filing with Co-Conspirator #1 were fraudulent.

                                    14

r.    Despite being repeatedly notified about the frivolous and illegal nature of the Form 1041 tax returns that defendant and Co-Conspirator #1 had prepared and filed, defendant continued to assist Co-Conspirator #1 in an effort to cause the IRS to pay out large refunds based on fraudulent Forms 1041. Among other things, on or about March 10, 2021, defendant used her commission as a notary public to notarize a trust certification for Co-Conspirator #1's Brother to Brother Outreach Trust. That trust certification was attached to a 2019 Form 1041 for Brother to Brother Outreach Trust, which claimed a $13 million refund based on false 1099 withholdings. Defendant also, at Co-Conspirator #1's request, created a draft of the 2019 Form 1041 for Brother to Brother Outreach Trust requesting the $13 million refund and provided it to Co-Conspirator #1.

s.    The false and fraudulent Forms 1041 that defendant prepared and filed in concert and agreement with Co-Conspirator #1 caused a tax loss to the IRS of at least $13,763,934.23. Defendant generally received fees for preparing the false Forms 1041 and associated documents at Co-Conspirator #1's direction. Other than the $100,000 received from client C.P., defendant did not receive portions of the clients' fraudulently obtained refunds. Conversely, as the leader and organizer of the fraudulent return filing scheme, Co-Conspirator #1 received large payments out of the refunds that IRS paid to the clients.

<u>SENTENCING FACTORS</u>

15.    Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set

forth in 18 U.S.C. § 3553(a). Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crime of
conviction.

16.    Defendant and the Government agree to the following
applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1 |
| Specific Offense Characteristics: | | |
| Loss >$9,500,000,<$25,000,000 | +20 | U.S.S.G. § 2B1.1(b)(1)(K) |
| Adjustments: | | |
| Minor Participant Role | -2 | U.S.S.G. § 3B1.2(b) |
| Zero-Point Offender Reduction | -2 | U.S.S.G. § 4C1.1 |
| Acceptance of Responsibility: | -2 | U.S.S.G. § 3E1.1(a) |
| Contingent Reduction for Government Motion for Acceptance of Responsibility: | -1 | U.S.S.G. § 3E1.1(b) |
| Total Offense Level: | 19 | |

The Government will agree to a two-level downward adjustment for
acceptance of responsibility (and, if applicable, move for an
additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))
only if the conditions set forth in paragraph 5) are met and if
defendant has not committed, and refrains from committing, acts
constituting obstruction of justice within the meaning of U.S.S.G. §
3C1.1, as discussed below. Subject to paragraph 29 below, defendant

16

and the Government agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the Government were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the Government, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the Government would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's offense level is so altered, defendant and the Government will not be bound by the agreement to the Sentencing Guideline factors set forth above.

17. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18. Defendant reserves the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7). The Government agrees to argue for a sentence within the Sentencing Guidelines range as established by the Court at sentencing.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

17

1        b.   The right to a speedy and public trial by jury.

2        c.   The right to be represented by counsel – and if

3 necessary, have the Court appoint counsel - at trial. Defendant

4 understands, however, that, defendant retains the right to be

5 represented by counsel – and if necessary, have the Court appoint

6 counsel – at every other stage of the proceeding.

7        d.   The right to be presumed innocent and to have the

8 burden of proof placed on the government to prove defendant guilty

9 beyond a reasonable doubt.

10       e.   The right to confront and cross-examine witnesses

11 against defendant.

12       f.   The right to testify and to present evidence in

13 opposition to the charges, including the right to compel the

14 attendance of witnesses to testify.

15       g.   The right not to be compelled to testify, and, if

16 defendant chose not to testify or present evidence, to have that

17 choice not be used against defendant.

18       h.   Any and all rights to pursue any affirmative defenses,

19 Fourth Amendment or Fifth Amendment claims, and other pretrial

20 motions that have been filed or could be filed.

21 <u>WAIVER OF APPEAL OF CONVICTION</u>

22   20.  Defendant understands that, with the exception of an appeal

23 based on a claim that defendant's guilty plea was involuntary, by

24 pleading guilty defendant is waiving and giving up any right to

25 appeal defendant's conviction on the offense to which defendant is

26 pleading guilty. Defendant understands that this waiver includes, but

27 is not limited to, arguments that the statute to which defendant is

28 pleading guilty is unconstitutional, and any and all claims that the

1 statement of facts provided herein is insufficient to support

2 defendant's plea of guilty.

3 <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

4     21.  Defendant agrees that, provided the Court imposes a total

5 term of imprisonment within or below the range corresponding to an

6 offense level of 19 and the criminal history category calculated by

7 the Court, defendant gives up the right to appeal all of the

8 following: (a) the procedures and calculations used to determine and

9 impose any portion of the sentence; (b) the term of imprisonment

10 imposed by the Court; (c) the fine imposed by the Court, provided it

11 is within the statutory maximum; (d) to the extent permitted by law,

12 the constitutionality or legality of defendant's sentence, provided

13 it is within the statutory maximum; (f) the term of probation or

14 supervised release imposed by the Court, provided it is within the

15 statutory maximum; and (g) any of the following conditions of

16 probation or supervised release imposed by the Court: the conditions

17 set forth in Second Amended General Order 20-04 of this Court; the

18 drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

19 3583(d); and the alcohol and drug use conditions authorized by 18

20 U.S.C. § 3563(b)(7).

21     22.  The Government agrees that, provided (a) all portions of

22 the sentence are at or below the statutory maximum specified above

23 and (b) the Court imposes a term of imprisonment of no less than

24 within or above the range corresponding to an offense level of 19 and

25 the criminal history category calculated by the Court, the Government

26 gives up its right to appeal any portion of the sentence.

27

28

1

## RESULT OF WITHDRAWAL OF GUILTY PLEA

2    23.  Defendant agrees that if, after entering a guilty plea

3 pursuant to this agreement, defendant seeks to withdraw and succeeds

4 in withdrawing defendant's guilty plea on any basis other than a

5 claim and finding that entry into this plea agreement was

6 involuntary, then (a) the Government will be relieved of all of its

7 obligations under this agreement, including in particular its

8 obligations regarding the use of Cooperation Information; (b) in any

9 investigation, criminal prosecution, or civil, administrative, or

10 regulatory action, defendant agrees that any Cooperation Information

11 and any evidence derived from any Cooperation Information shall be

12 admissible against defendant, and defendant will not assert, and

13 hereby waives and gives up, any claim under the United States

14 Constitution, any statute, or any federal rule, that any Cooperation

15 Information or any evidence derived from any Cooperation Information

16 should be suppressed or is inadmissible; and (c) should the

17 Government choose to pursue any charge or any civil, administrative,

18 or regulatory action that was either dismissed or not filed as a

19 result of this agreement, then (i) any applicable statute of

20 limitations will be tolled between the date of defendant's signing of

21 this agreement and the filing commencing any such action; and

22 (ii) defendant waives and gives up all defenses based on the statute

23 of limitations, any claim of pre-indictment delay, or any speedy

24 trial claim with respect to any such action, except to the extent

25 that such defenses existed as of the date of defendant's signing this

26 agreement.

27

28

1                        EFFECTIVE DATE OF AGREEMENT

2        24.   This agreement is effective upon signature and execution of

3    all required certifications by defendant, defendant's counsel, and a

4    Tax Division Trial Attorney or Assistant United States Attorney.

5                          BREACH OF AGREEMENT

6        25.   Defendant agrees that if defendant, at any time after the

7    signature of this agreement and execution of all required

8    certifications by defendant, defendant's counsel, and a Tax Division

9    Trial Attorney or Assistant United States Attorney, knowingly

10   violates or fails to perform any of defendant's obligations under

11   this agreement ("a breach"), the Government may declare this

12   agreement breached. For example, if defendant knowingly, in an

13   interview, before a grand jury, or at trial, falsely accuses another

14   person of criminal conduct or falsely minimizes defendant's own role,

15   or the role of another, in criminal conduct, defendant will have

16   breached this agreement. All of defendant's obligations are material,

17   a single breach of this agreement is sufficient for the Government to

18   declare a breach, and defendant shall not be deemed to have cured a

19   breach without the express agreement of the Government in writing.

20   If the Government declares this agreement breached, and the Court

21   finds such a breach to have occurred, then:

22           a.   If defendant has previously entered a guilty plea

23   pursuant to this agreement, defendant will not be able to withdraw

24   the guilty plea.

25           b.   The Government will be relieved of all its obligations

26   under this agreement; in particular, the Government: (i) will no

27   longer be bound by any agreements concerning sentencing and will be

28   free to seek any sentence up to the statutory maximum for the crime

                                    21

to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime including charges that the Government would otherwise have been obligated not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The Government will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

26.  Following the Court's finding of a knowing breach of this agreement by defendant, should the Government choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

27.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the Government's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.  Defendant understands that both defendant and the Government are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations

in paragraph 17 are consistent with the facts of this case. While this paragraph permits both the Government and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the Government's obligations not to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the Government and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

/ / /

/ / /

/ / /

/ / /

1 | / / /

2 | / / /

3 | PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4      31.   The parties agree that this agreement will be considered

5 part of the record of defendant's guilty plea hearing as if the

6 entire agreement had been read into the record of the proceeding.

7 AGREED AND ACCEPTED

8 BILAL A. ESSAYLI
  United States Attorney

9

10 _____          8 / 11 / 25
   PATRICK BURNS                              Date

11 MAHANA WEIDLER
   Trial Attorneys

12 Department of Justice - Tax
   Division

13

14 _____          8/7/25
   SUSANA LORENA VIRREY                       Date

15 Defendant                                  8/11/2025

16 _____          Date
   DENNIS A. KENT, ESQ.

17 Attorney for Defendant SUSANA
   LORENA VIRREY

18

19

20

21

22

23

24

25

26

27

28

1    CERTIFICATION OF DEFENDANT

2         I have read this agreement in its entirety. I have had enough

3    time to review and consider this agreement, and I have carefully and

4    thoroughly discussed every part of it with my attorney. I understand

5    the terms of this agreement, and I voluntarily agree to those terms.

6    I have discussed the evidence with my attorney, and my attorney has

7    advised me of my rights, of possible pretrial motions that might be

8    filed, of possible defenses that might be asserted either prior to or

9    at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10   of relevant Sentencing Guidelines provisions, and of the consequences

11   of entering into this agreement. No promises, inducements, or

12   representations of any kind have been made to me other than those

13   contained in this agreement. No one has threatened or forced me in

14   any way to enter into this agreement. I am satisfied with the

15   representation of my attorney in this matter, and I am pleading

16   guilty because I am guilty of the charge and wish to take advantage

17   of the promises set forth in this agreement, and not for any other

18   reason.

19

20   _____          8/7/25 _____
     SUSANA LORENA VIRREY                   Date
21   Defendant

22

23

24

25

26

27

28

                                    26

1          CERTIFICATION OF DEFENDANT'S ATTORNEY

2          I am SUSANA LORENA VIRREY's attorney.  I have carefully and

3    thoroughly discussed every part of this agreement with my client.

4    Further, I have fully advised my client of her rights, of possible

5    pretrial motions that might be filed, of possible defenses that might

6    be asserted either prior to or at trial, of the sentencing factors

7    set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8    provisions, and of the consequences of entering into this agreement.

9    To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the factual basis set

14   forth in this agreement is sufficient to support my client's entry of

15   a guilty plea pursuant to this agreement.

16   _____        _8/11/2025_____

17   DENNIS A. KENT, ESQ.                Date
     Attorney for Defendant SUSANA

18   LORENA VIRREY

19

20

21

22

23

24

25

26

27

28

                                27